UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KATHLEEN-MARIE SNOW,

Plaintiff,

v.

TIM CONNOLLY; MIGUEL AVILA; Deputy JARROD BUSWELL, in his individual capacity; Deputy M. MARTINEZ, in his individual capacity; Deputy FRANK JAMES, in his individual capacity; Officer GRAHAM NIGEL AANESTAD, in his individual capacity; Deputy ROBERT ROACH, in his individual capacity; Deputy ANDERSON LATURE, in his individual capacity; Deputy DANIEL HOUSEHOLDER, in his individual capacity; Deputy BRYAN DE LOSS, in his individual and official capacities; KELLY A. MARTINEZ, Sheriff of San Diego County, in her individual and official capacities; CHAD BIANCO, Sheriff of Riverside County, in his individual and official capacities; COUNTY OF SAN DIEGO, a public entity; COUNTY OF RIVERSIDE, a public entity; and DOES 1–10, inclusive,

Defendants.

Case No.:  25-CV-729 TWR (JLB)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

(ECF Nos. 27, 28, 31, 37)

Presently before the Court are the Motions to Dismiss filed by San Diego Defendants Deputy Jarrod Buswell, Deputy Matthew Martinez, Sheriff Kelly Martinez, and County of San Diego ("S.D. Mot.," ECF No. 27); Bail Agent Defendants Tim Connolly and Miguel Avila ("Bail Mot.," ECF No. 28); Riverside Defendants Deputy Frank James, Deputy Robert Roach, Deputy Anderson Lature, Deputy Daniel Householder, Sgt. Bryan De Loss (erroneously sued as Deputy Bryan De Loss), Sheriff Chad Bianco, and the County of Riverside ("Riverside Mot.," ECF No. 31); and Officer Graham Nigel Aanestad ("CHP Mot.," ECF No. 37) (together, the "Mots."), as well as Plaintiff Kathleen Marie Snow's Oppositions (ECF Nos. 32 ("S.D./Bail Opp'n"), 40 ("Riverside Opp'n"), 42 ("CHP Opp'n")), and the Replies filed by the San Diego Defendants ("S.D. Reply," ECF No. 38), the Riverside Defendants ("Riverside Reply," ECF No. 44), and Officer Aanestad ("CHP Reply," ECF No. 45).  The Court took the Motions under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  (*See generally* ECF Nos. 30, 36, 39.)  Having carefully reviewed Plaintiff's Second Amended Complaint ("SAC," ECF No. 13), those exhibits properly subject to judicial notice or incorporated by reference,[1] the Parties' arguments, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** the Motions, as follows.

/ / /

/ / /

/ / /

---

[1]    The San Diego Defendants request that the Court take judicial notice of the Riverside Superior Court files for criminal cases SWM2402249 and SWM2400305 against Plaintiff, (*see* ECF No. 27-2 at 186), and the Bail Agent Defendants ask the Court to consider the case reports for the same two criminal cases; the notices of forfeiture of bail; Plaintiff's April 23, 2024 "Plain Talk Contract" with Bail Hotline; and Plaintiff's April 23, 2024 Bail Hotline Notice of Pre-Trial Release, Release on Bail, Revocation, Re-Arrest & Surrender.  (*See* ECF No. 28 at 19–40.)  The Court concludes that the Riverside Superior Court files for criminal cases SWM2402249 and SWM2400305, the case reports, and the notices of forfeiture of bail are all matters of public record that are properly subject of judicial notice.  *See, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record." (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998))).

25-CV-729 TWR (JLB)

# BACKGROUND

## I.    Plaintiff's Allegations[2]

### A.    Plaintiff's December 26, 2023 Arrest

On December 26, 2023, Plaintiff—a sixty-five-year-old woman who objects to being labelled a sovereign citizen[3]—was pulled over by Officer Aanestad for allegedly failing to stop at a stop sign.  (*See* SAC at 3.)  According to Plaintiff, "[t]he stop was premeditated, as the officer was lying in wait on the opposite side of the street."  (*Id.*)  Plaintiff provided Officer Aanestad "with a written 'Constructive Notice' stating she was travelling in a private capacity and not operative a commercial vehicle."  (*Id.* at 3–4.)

Irritated, Officer Aanestad told Plaintiff and her husband that they were not free to leave and that additional officers would be summoned.  (*See id.* at 4.)  "In fear and asserting their right to travel and to be free from unlawful seizure, the Snows continued on to a local hardware store."  (*Id.*)

Officer Aanestad called for backup, and four Riverside County Sheriff's Deputies responded.  (*See id.*)  They intercepted Plaintiff and her husband, arrested them "aggressively," and searched the Snows and their vehicle, all without the Snows' consent.

---

[2]    For purposes of the Motions, the facts alleged in Plaintiff's Second Amended Complaint are accepted as true.  *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").  The Court is also mindful that "pro se pleadings are liberally construed, particularly where civil rights claims are involved."  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

[3]    "One leading expert in the field proposed a simple definition: 'a sovereign citizen is someone who believes that he or she is above all laws.'"  Colin McRoberts, *Tinfoil Hats and Powdered Wigs: Thoughts on Pseudolaw*, 58 Washburn L.J. 637, 642–43 & n.25 (2019) (quoting JJ MacNab, *What is a Sovereign Citizen?*, Forbes (Feb. 13, 2012), ttps://www.forbes.com/sites/jjmacnab/2012/02/13/what-is-a-sovereign-citizen/ [https://perma.cc/8D7F-LT8B]).  Professor McRoberts, however, instead advocates for use of the term "pseudolaw," which "can [be] define[d] . . . in such a way that it captures the overall set of nonsense legal beliefs while preserving our understanding of definable subtypes such as the 'sovereign citizen' movement," and "adopt[s] the definition proposed by another expert in this field: 'Pseudolaw is a collection of legal-sounding but false rules that purport to be law.'"  *Id.* at 643 & n.27 (quoting Donald Netolitzky, *A Rebellion of Furious Paper: Pseudolaw as a Revolutionary Legal System* (May 3, 2018), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3177484 [https://perma.cc/5EBG-VK2T]).

25-CV-729 TWR (JLB)

(*See id.*)  Plaintiff "was threatened with a Taser and her husband forced to his knees." (*Id.*) "[F]acial recognition software was used on [Plaintiff] without legal justification, allegedly retrieving her license to force a contract." (*Id.*)  The Snows' vehicle was towed and impounded.  (*See id.*)

Plaintiff and her husband were booked into the Riverside County jail for twelve hours on charges of resisting arrest, interfering with an officer, and "unsnapping a holster strap," a claim Plaintiff denies.  (*See id.*; *see also, e.g.*, ECF No. 27-2 at 94 (citation).) They were never Mirandized.  (*See* SAC at 4.)  Plaintiff signed several documents "under protest and duress" and was released without being taken before a judge.  (*See id.*)  She paid a $500 bond on bail of $5,000.  (*See* ECF No. 27-2 at 97.)

Shortly after the Snows' release, "Plaintiff mailed rescinded citations back to the court in red ink, asserting fraud and contractual defects." (*See* SAC at 4.)  She received a letter stating, "No active cases," which Plaintiff understood to mean that her citations had been "nullified." (*See id.*)

A misdemeanor complaint was filed against Plaintiff on January 17, 2024, *People v. Snow*, No. SWM2400305 (Riverside Cnty. Super. Ct. filed Jan. 17, 2024).  (*See* ECF No. 27-2 at 95–96.)  After Plaintiff failed to appear for her arraignment on March 22, 2024, a warrant for her arrest was issued.  (*See, e.g.*, ECF No. 27-2 at 93.)

**B.    Plaintiff's April 18, 2024 Arrest and Eviction**

Plaintiff sent a certified letter to the Riverside County Sheriff on April 7, 2024, notifying Sheriff Bianco "of an illegal foreclosure and demanding constitutional protection." (*See* SAC at 5.)  The letter was signed for on April 17, 2024.  (*See id.*)

On April 18, 2024, Sgt. De Loss pulled Plaintiff over, claiming to have a warrant for her arrest but failing to show it to her.[4]  (*See id.*)  Calling Plaintiff by name, Sgt. De Loss

---

[4]    The Court takes judicial notice of the fact that a bench warrant was issued on March 22, 2024, for Plaintiff's failure to appear at her arraignment, (*see* ECF No. 27-2 at 93), and was not recalled until April 25, 2024, (*see id.* at 92).  *See, e.g.*, *Mattingly v. Jurek*, No. 24-CV-04595-SVK, 2025 WL 1771454, at *1 (N.D. Cal. June 26, 2025) ("[J]udicial notice can include taking 'notice of a bench warrant as a matter

also told Plaintiff that he "knew who she was," despite Plaintiff never having met him before. (*See id.*) Plaintiff saw Officer Aanestad "nearby, watching from a distance but not participating, suggesting a coordinated or retaliatory effort." (*See id.* at 9.)

Plaintiff insisted on seeing the warrant, but Sgt. De Loss told Plaintiff, "No, it doesn't work that way—get out of the car or I'll break the window." (*See id.* at 5.) Sgt. De Loss then arrested Plaintiff and her husband, impounded their vehicle, and transported Plaintiff and her husband separately. (*See id.*) Plaintiff claims that her husband "was later released in the middle of the desert with only his phone." (*See id.*)

Plaintiff was arrested for resisting arrest. (*See id.*) Despite posting a $10,000 bond on a $100,000 bail, Plaintiff was held for an additional eleven hours. (*See id.*; *see also* ECF No. 27-2 at 14 (bail bond).) A misdemeanor complaint was filed against Plaintiff on April 30, 2024, *People v. Snow*, No. SWM2402249 (Riverside Cnty. Sup. Ct. filed Apr. 30, 2024), alleging a violation of California Penal Code § 148(a)(1). (*See* ECF No. 27-2 at 12–13.)

Three weeks later, a "backdated eviction notice was posted on [Plaintiff's] home" dated April 18, 2024. (*See* SAC at 6.) The notice gave Plaintiff and her husband five days to vacate. (*See id.*) Soon thereafter, individuals purporting to the be "new owners" of the property approached Plaintiff's neighbors, accusing her of being a "'sovereign citizen' [who] had threatened to blow up a propone tank." (*See id.*) Plaintiff believes that these "defamatory statements" were "sourced from the Sheriff's Department." (*See id.*)

### C.    Plaintiff's July 23, 2024 Court Appearance

On July 23, 2024, Plaintiff appeared before the Honorable Johnetta E. Anderson of the Riverside County Superior Court. (*See* SAC at 6.) Judge Anderson "threatened to forfeit Plaintiff's bail and issue bench warrants if [Plaintiff] did not appear 'as the defendant or with an attorney,'" (*see id.*), and ultimately did so. (*See id.*) Plaintiff claims

of public record.'" (quoting *Neylon v. Cnty. of Inyo*, No. 16-cv-00712-AWI (JLT), 2016 WL 6834097, at *4 (E.D. Cal. Nov. 21, 2016))).

that Judge Anderson "concluded the hearing and recessed the court without setting another hearing date—an act that, by legal maxim, suggests an admission of procedural defeat:  *he who leaves the battlefield first admits defeat.*"  (*See id.* (emphasis in original).)

A review of the court records reveals that Plaintiff "refuse[d] to provide [Judge Anderson] with her true name," resulting in the forfeiture of Plaintiff's bail bond and the issuance of a bench warrant.  (*See* ECF No. 27-2 at 9.)  The case was recalled approximately a half-hour later, by which time Plaintiff was not present, and Judge Anderson set an arraignment for August 6, 2024, and held the bench warrant until that date.  (*See id.*)

Plaintiff made an online request for the minutes of the July 23, 2024 hearing on July 30, 2024.  (*See* SAC at 6.)  "She did so under the belief that the matter had been resolved in her favor—that the hearing had concluded the process, and that the court's inaction meant no further proceedings were necessary."  (*See id.* at 6–7.)

"The emotional devastation of discovering otherwise cannot be overstated— Plaintiff experienced a profound sense of betrayal by the justice system."  (*Id.* at 7.)  When Plaintiff received the court minutes by mail on August 6, 2024, she "discovered that Judge Anderson had falsified the record to reflect the setting of a hearing date as though it had happened at the hearing."  (*See id.*)  Judge Anderson had "also made other changes that did not reflect the actual hearing."  (*Id.*)

Plaintiff "notified the bail bondsmen, via phone call, that she had appeared in court with witnesses."  (*Id.*)  She also "sent a certified return receipt letter including a copy of the evidence showing her court appearance and detailing the judge's misconduct."  (*Id.*)  "She informed the bail bondsmen that failing to act on this information could constitute misprision of a felony and . . . would implicate them in the broader violation of her constitutional rights."  (*Id.*)

Plaintiff did not appear for her arraignment on August 6, 2024, (*see* ECF No. 27-2 at 9), resulting in the forfeiture of the bail bond and the release of the previously held bench warrant.  (*See id.* at 8–9; *see also id.* at 51.)

/ / /

25-CV-729 TWR (JLB)

**D.    Plaintiff's February 27, 2025 Arrest**

On February 27, 2025, the Bail Agent Defendants forced entry onto Plaintiff's property through a locked gate and falsely identified themselves as federal agents. (*See* SAC at 7.) "They handcuffed Plaintiff, barefoot, dragged her to a vehicle, and detained her." (*Id.*) The handcuffs were excessively tight and, despite Plaintiff's repeated requests for them to be adjusted, the Bail Agent Defendants kept her cuffed in that manner for three hours. (*See id.* at 7–8.) The deputy who later removed them in jail said "these are way too tight," and the resulting swelling and pain lasted for over a week. (*See id.* at 8.)

Plaintiff's husband called 911, and "sheriff's deputies" arrived at the scene. (*See id.*) They "did nothing to stop the unlawful seizure." (*See id.*) "Defendants Jarrod Buswell and M. Martinez and at least 4 other deputies who never left their vehicles were present for these events and failed to intervene." (*Id.*)

Plaintiff was removed from her property and transported "against her will" to a detention facility. (*See id.*)

**II.    Procedural Background**

Plaintiff filed her initial Complaint on March 28, 2025, alleging claims for violation of 18 U.S.C. §§ 241 and 242, criminal trespass, assault and battery, kidnapping, false arrest, unlawful imprisonment, impersonating a federal agent, and racketeering against the Bail Agent Defendants, Deputy Buswell, and Sheriff Martinez. (*See generally* ECF No. 1.) She filed a substantially similar First Amended Complaint on April 29, 2025. (*See generally* ECF No. 5.)

After the Bail Agent Defendants filed an initial motion to dismiss, (*see* ECF No. 7), Plaintiff sought leave to file a Second Amended Complaint. (*See* ECF No. 10.) Deputy Buswell and Sheriff Martinez then moved to dismiss, (*see* ECF No. 11), and Plaintiff filed a Notice of Filing Second Amended Complaint [With Supporting Exhibits 1 and 2]. (*See generally* ECF No. 13.) The Honorable Roger T. Benitez accepted Plaintiff's Second Amended Complaint and denied as moot the previously filed motions to dismiss on July 18, 2025. (*See* ECF No. 25.)

Plaintiff's operative Second Amended Complaint added the remaining San Diego Defendants, the Riverside Defendants, and Officer Aanestad, as well as a number of new claims. (*See generally* ECF No. 13.) Specifically, Plaintiff alleges the following eleven causes of action: (1) violation of her civil rights under the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against all Defendants; (2) liability pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the Counties of San Diego and Riverside; (3) failure to intervene pursuant to 42 U.S.C. § 1983 against San Diego Deputy Defendants Buswell and Martinez and Riverside Deputy Defendants James, Roach, Lature, and Householder; (4) conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. § 1983 against the Bail Agent Defendants and San Diego Deputies Buswell and Martinez; (5) trespass against the Bail Agent Defendants; (6) false imprisonment against all Defendants; (7) assault and battery against the Bail Agent Defendants; Riverside Officer Defendants De Loss, James, Roach, Lature, and Householder; and Officer Aanestad; (8) violation of California's Bane Act, Cal. Civ. Code § 52.1, against the Bail Agent Defendants, the Riverside Officer Defendants, and Officer Aanestad; (9) intentional infliction of emotional distress against all Defendants; (10) "kidnapping under color of law" under 42 U.S.C. § 1983 against the Bail Agent Defendants, the Riverside Officer Defendants, and Officer Aanestad; and (11) false arrest and excessive force in violation of Plaintiff's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 against Officer Aanestad and Riverside Deputies James, Roach, Lature, and Householder. (*See* ECF No. 13 at 9–13.) In addition to declaratory and injunctive relief, Plaintiff seeks "compensatory damages against all Defendants, jointly and severally, including for emotional distress, loss of liberty, reputational harm, and psychological injury" and punitive damages against all Defendants except for the Counties of San Diego and Riverside. (*See id.* at 13–15.)

The Bail Agent Defendants filed their Motion on August 14, 2025, (*see generally* ECF No. 28), and the San Diego Defendants filed their Motion on August 15, 2025. (*See generally* ECF No. 27.) This action was then transferred to the undersigned on August 20,

2025. (*See* ECF No. 29.)  The Riverside Defendants filed their Motion on August 29, 2025, (*see generally* ECF No. 31), and Officer Aanestad filed his Motion on September 2, 2025. (*See generally* ECF No. 37.)

## LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile."  *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

25-CV-729 TWR (JLB)

**ANALYSIS**

In her Second Amended Complaint, Plaintiff has taken a kitchen-sink approach, alleging an assortment of claims against a variety of different Defendants. Complicating matters, four different groups of Defendants have filed separate Motions seeking dismissal of all of Plaintiff's claims with prejudice. Although there is some overlap between these Motions, some of them also raise novel arguments unique to certain Defendants. The Court therefore first addresses Plaintiff's federal claims against each group of Defendants and then Plaintiff's state law claims against each group of Defendants.

## I.      Federal Claims

Plaintiff alleges that her First, Fourth, and Fourteenth Amendment rights were violated by all Defendants for "[r]etaliatory arrest, unlawful entry, seizure, excessive force, kidnapping, warrantless search of her vehicle without probable cause, and deprivation of procedural and substantive due process." (*See* SAC at 9–10.) Plaintiff also alleges *Monell* claims against the Counties of San Diego and Riverside "[f]or maintaining unconstitutional policies, customs, and practices; failing to train and supervise; and ignoring prior written notices explicitly identifying Plaintiff's legal status and rights." (*See id.* at 10.) Plaintiff sues the Deputy Defendants for failure to intervene, (*see id.*); the Bail Agent Defendants and Deputies Buswell and Martinez for conspiracy to violate her civil rights, (*see id.*); the Bail Agent Defendants, the Riverside Officers, and Officer Aanestad for "kidnapping under color of law," (*see id.* at 12); and Officer Aanestad and the Riverside Deputies for false arrest and excessive force arising out of the December 2023 arrest, (*see id.*).

Because each group of Defendants has separately moved to dismiss, the Court will address each group of Defendants' arguments for dismissal of Plaintiff's federal claims.

### A.      The San Diego Defendants

The San Diego Defendants argue for dismissal with prejudice of all Plaintiff's claims against them on several grounds, including that the Second Amended Complaint fails to comply with Federal Rule of Civil Procedure 8(a)(1); Plaintiff fails to state a claim under Section 1983 because the San Diego Defendants did not participate in any of the alleged

misconduct and are entitled to qualified immunity; the Court should abstain from adjudicating any challenges to Plaintiff's criminal proceedings in state court under *Younger v. Harris*, 401 U.S. 37 (1971); and the *Rooker-Feldman* doctrine prohibits the Court from challenging her eviction proceedings in this Court. (*See generally* ECF No. 27-1 ("S.D. Mem.").)

Plaintiff alleges claims against the San Diego Defendants for retaliatory arrest, unlawful entry, seizure, excessive force, warrantless search of her vehicle without probable cause, deprivation of procedural and substantive due process, failure to intervene, and conspiracy to violate civil rights. (*See* FAC at 9–11.) She also asserts a *Monell* claim against the County of San Diego. (*See id.* at 10.) In her Opposition, Plaintiff clarifies that her "claims against the San Diego defendants arise from th[e February 27, 2025] San Diego incident[.]" (*See* S.D./Bail Opp'n at 7.)

### 1. Claims Against the San Diego Deputies

Although Plaintiff asserts claims against Deputies Buswell and Martinez for violation of her First, Fourth, and Fourteenth Amendment rights; failure to intervene; and conspiracy to violate Plaintiff's civil rights, (*see* FAC at 9–10), the Court notes that Plaintiff's only allegations specific to the San Diego Deputies on February 27, 2025, are that Deputies Buswell and Martinez "and at least 4 other deputies who never left their vehicles" responded to her husband's 911 call and "did nothing to stop the [Bail Agent Defendants'] unlawful seizure" of her. (*See id.* at 8.) There are no allegations that either of the two named San Diego Deputies ever entered Plaintiff's property, assisted with her arrest, searched her or her vehicle, or in any way communicated with the Bail Agent Defendants. (*See generally id.*) Based on the facts alleged in Plaintiff's Second Amended Complaint, her only viable theory against Deputies Buswell and Martinez is for failure to intervene. *See, e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."); *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's

25-CV-729 TWR (JLB)

constitutional rights under § 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy.").

"Police officers have a duty to intervene when their fellow officers violate the constitutional rights of a citizen in their presence." *Manlove v. Cnty. of San Diego*, 759 F. Supp. 3d 1057, 1066 (S.D. Cal. 2024) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* (quoting *Cunningham*, 229 F.3d at 1271). "Apart from the conclusory allegation that officers failed to intervene in contravention of h[er] constitutional rights, Plaintiff identifies no facts indicating who failed to intervene, how, or whether anyone had the opportunity to intercede." *See id.* at 1066–67.  For example, Plaintiff does not allege that Deputies Buswell or Martinez had reason to believe that Plaintiff was being arrested unlawfully or that she had been handcuffed too tightly. (*See generally* SAC.)  "Without these basic facts, Plaintiff cannot plead a constitutional claim based on the intervention theory." *See Manlove*, 759 F. Supp. 3d at 1067 (citing *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

The Court therefore **GRANTS IN PART** the San Diego Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Section 1983 claims against Deputies Buswell and Martinez.

### 2. Claims Against Sheriff Martinez

Plaintiff asserts claims against Sheriff Martinez for violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights.  (*See* SAC at 9–10.)  "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  For example, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or

callous indifference to the rights of others." *Id.* (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Here, there is no allegation that Sheriff Martinez was among those who responded to Plaintiff's husband's call on February 27, 2025. (*See generally* SAC.) Instead, Plaintiff alleges only that she "had previously sent a Certified Return Receipt Letter to the Sheriff of San Diego County, informing h[er] of the protected constitutional status of [Plaintiff's] property and her rights" but that, "[d]espite receiving these notices, [the] Sheriff[] failed to act, train, supervise, or discipline [her] subordinates[.]" (*See id.* at 8.) Although Plaintiff does not specifically mention failure to train in Count I, (*see id.* at 9–10), the Court liberally construes Plaintiff's Second Amended Complaint as alleging a claim against Sheriff Martinez based on a failure-to-train theory. *See, e.g.*, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir.), *as amended* (May 22, 1992) ("[W]e also are mindful of Supreme Court precedent that instructs federal courts liberally to construe the 'inartful pleading' of pro se litigants. . . . This rule is particularly important in civil rights cases." (citations omitted)).

The San Diego Defendants contend that Plaintiff's allegations as to Sheriff Martinez are conclusory. (*See* S.D. Mem. at 8–9.) The Court agrees. Plaintiff "must show that [Sheriff Martinez] was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *See Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 59 (2011)). "Under this standard, [Plaintiff] must allege facts to show that . . . [Sheriff Marinez] 'disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'" *Id.* (fourth alteration in original) (quoting *Connick*, 563 U.S. at 61). "A 'pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,' though there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" *Id.* (alteration in original) (quoting *Connick*, 563 U.S. at 62, 63).

25-CV-729 TWR (JLB)

Plaintiff does not allege a pattern of similar constitutional violations, (*see generally* SAC), nor does this appear to be the rare instance in which alleging a pattern of similar violations is not necessary.  Indeed, "Plaintiff here does not allege any facts about what training was (or was not) provided that would show any of the defendants were 'deliberately indifferent' to h[er] constitutional rights." *See Voskanyan v. Unknown*, No. CV 15-06259-MWF(KES), 2015 WL 13762733, at *3 (C.D. Cal. Dec. 18, 2015).  "[Sh]e does not even allege what the supervisory defendants should have trained their subordinates to do or not to do." *See id.*  Given Plaintiff's failure to allege such facts, the Court **GRANTS IN PART** the San Diego Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Sheriff Martinez.  *See, e.g.*, *id.* (dismissing without prejudice failure to train claims against supervisory defendants); *see also, e.g.*, *Est. of Bonilla v. Cnty. of Merced*, No. 118CV00329DADSKO, 2019 WL 1405551, at *7 (E.D. Cal. Mar. 28, 2019) (dismissing failure-to-train claims where "plaintiffs make conclusory and seemingly boilerplate allegations that defendant Sheriff Warnke and the Doe defendants were deliberately indifferent in their training and supervision" and "do not identify the training defendants should have received or implemented to prevent the alleged constitutional violations"); *Flores-Ramirez v. Three Unknown Fed. Task Force Agents*, No. CV 17-2360 SJO (SS), 2018 WL 1354240, at *4 (C.D. Cal. Mar. 15, 2018) ("Plaintiff's conclusory failure to train allegation does not even identify the kind of training that Plaintiff believes Defendants should have received, but presumably did not.  Accordingly, the claim against the supervisor must be dismissed, with leave to amend.").

### 3.  Claims Against the County of San Diego

Finally, Plaintiff alleges a *Monell* claim against the County of San Diego "[f]or maintaining unconstitutional policies, customs, and practices; failing to train and supervise; and ignoring prior written notices explicitly identifying Plaintiff's legal status and rights." (*See* SAC at 10.)  "A local government is liable for an injury under § 1983 under three possible theories." *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018) (citing

14

*Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060). "First, a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'" *Id.* (alteration in original) (quoting *Monell*, 436 U.S. at 694). "Second, a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

Here, Plaintiff alleges that Sheriff Marinez "failed to act, train, supervise, or discipline [her] subordinates" despite receiving Plaintiff's "notice" of "the protected constitutional status of her property and her rights," "reflect[ing] a policy or custom of ignoring lawful constitutional assertions and protections." (*See* SAC at 8; *see also id.* at 10.) To the extent Plaintiff seeks to hold the County of San Diego liable under a failure-to-train theory, her claim fails for the same reasons that she fails to state a claim against Sheriff Martinez in her individual capacity. *See supra* Section I.A.2; *see also, e.g.*, *Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1170 (E.D. Cal. 2013) (finding inadequate the plaintiff's allegations of "a general policy of not properly training deputies in the areas of questioning, detention, and custody of individuals").

Insofar as Plaintiff seeks to allege a claim against the County of San Diego based on a policy or custom, Plaintiff must allege "an 'expressly adopted official policy or a widespread or longstanding practice or custom'" that "is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.'" *Stein v.*

*City of S.D.*, No. 24CV00953 DMS (AHG), 2026 WL 84412, at \*2 (S.D. Cal. Jan. 12, 2026) (quoting 9th Cir. Civ. Jury Instr. 9.5 (2017)).  Plaintiff does not identify an expressly adopted official policy, (*see generally* SAC), and "[a] widespread practice or custom must be so 'persistent' that it constitutes a 'permanent and well settled city policy' and 'constitutes the standard operating procedure of the local governmental entity.'"  *Stein*, 2026 WL 84412, at \*2 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). Because Plaintiff fails to allege any incidents similar to the incident on February 27, 2025, the Court **GRANTS IN PART** the San Diego Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's *Monell* claims against the County of San Diego. *See, e.g.*, *Johnson v. City of San Jose*, 591 F. Supp. 3d 649, 668 (N.D. Cal. 2022) (dismissing *Monell* claim where the plaintiff "ha[d] not sufficiently alleged any other examples" of the alleged custom); *see also, e.g.*, *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2021) ("[A]n 'isolated or sporadic incident[ ]' . . . cannot form the basis of *Monell* liability for an improper custom." (second alteration in original) (quoting *Trevino*, 99 F.3d at 918)).

### B.    *Claims Against the Bail Agent Defendants*

Plaintiff asserts claims against the Bail Agent Defendants under Section 1983 for violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, (*see* SAC at 9–10), and for conspiracy to violate Plaintiff's civil rights.  (*See id.* at 10.)  Although the Bail Agent Defendants raise several arguments for dismissal of Plaintiff's federal claims against them,[5] the Court need not address them all because the Bail Agent Defendants' argument that they were not acting under color of state law is dispositive.

/ / /

---

[5]    Specifically, the Bail Agent Defendants contend that Plaintiff lacks standing because she suffered no injury in fact, (*see* Bail Mot. at 9–11); Plaintiff's Second Amended Complaint fails to conform with Rule 8(a), (*see* Bail Mot. at 11–13); the Bail Agent Defendants are private actors, not state actors, (*see id.* at 15); Plaintiff was lawfully arrested pursuant to a valid bench warrant, (*see id.*); and Plaintiff fails to allege an agreement or meeting of the minds to support a claim for conspiracy, (*see id.*).

Plaintiff herself identifies the Bail Agent Defendants as "bail bondsmen," (*see, e.g.,* SAC at 7, 14), and "purely private conduct, no matter how wrongful, is not within the protective orbit of section 1983." *Ouzts v. Md. Nat. Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974) (citing *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)), *cert. denied*, 421 U.S. 949 (1975). The Court "start[s] with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). "[F]or private conduct to constitute governmental action, 'something more' must be present." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). "Courts have used four different factors or tests to identify what constitutes 'something more': (1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Id.* at 835–36 (citing *Lugar*, 457 U.S. at 939; *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir.), *cert. denied*, 522 U.S. 996 (1997); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995); *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 506 (9th Cir. 1989)). Plaintiff invokes joint action in her Opposition. (*See* S.D./Bail Opp'n at 8.)

"One way to establish joint action is to demonstrate a conspiracy." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (citing *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983)). Although Plaintiff does allege "[a]greement and joint action between private and public actors to violate Plaintiff's constitutional rights[,]" (*see* SAC at 9), Plaintiff fails to "state specific facts to support the existence of the claimed conspiracy." *See Burns*, 883 F.2d at 821.

"Joint action also exists where a private party is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting under color of law for purposes of § 1983 actions." *Collins*, 878 F.2d at 1154 (internal quotation marks omitted) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)). The Ninth Circuit has "observed that [t]he joint action inquiry focuses on whether the state has so far

25-CV-729 TWR (JLB)

insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity. . . ." *Id.* (internal quotation marks omitted and alterations in original) (quoting *Gorenc*, 869 F.2d at 507). "Joint action therefore requires a substantial degree of cooperative action." *Id.*

In *Collins*, for example, the Ninth Circuit reversed and remanded the trial court's decision that employees of a non-profit provider of various women's health services had acted under color of state law where the employees had effected citizen's arrests on protestors who were violating a preliminary injunction and local police then detained the protestors "long enough to issue misdemeanor citations for violating the injunction." *See id.* at 1146–47. The court concluded that "the facts alleged by the [protestors had] fail[ed] as a matter of law to satisfy the joint activity test for state action under section 1983" because "the impetus for the arrests came from [the non-profit's] employees and not San Diego police officers," *see id.* at 1155 (citing *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir.), *cert. denied*, 454 U.S. 967 (1981)); "the police officer refused, after conducting an independent investigation, to arrest the protesters on his own authority[,]" *see id.* (citing *Nat'l Coll. Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 196 n.16 (1988); and "the police maintained a policy of neutrality in the dispute[,]" *see id.* (citing *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987); *Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987); *White v. Scrivner Corp.*, 594 F.2d 140, 143–44 (5th Cir. 1979)). "In short," the Ninth Circuit concluded, "there [wa]s no indication in the record that state agents failed to use independent judgment or in any way coerced or encouraged [the non-profit's] employees to effect the citizen's arrest." *Id.* (citing *S.F. Arts & Athletics, Inc. v. U.S. Olympic Cmtee.*, 483 U.S. 522, 546 (1987)).

As in *Collins*, there is no indication of joint action here. As Plaintiff alleges, (*see* SAC at 7–8), the impetus of Plaintiff's arrest came from the Bail Bond Defendants—not the San Diego Deputies, who only arrived in response to Plaintiff's husband's call to 911. Further, by Plaintiff's own admission, the San Diego Deputies did not in any way participate in Plaintiff's arrest. This conclusion follows the Ninth Circuit's finding that

18

bail bondsmen generally are not acting under color of state law for purposes of Section 1983 because they are "in the business in order to make money and . . . not acting out of a high-minded sense of devotion to the administration of justice." *See Ouzts*, 505 F.2d at 555.

Because the Court concludes that Plaintiff fails to allege that the Bail Agent Defendants were acting under color of state law, the Court **GRANTS IN PART** the Bail Agent Defendants' Motion and **DISMISSES** Plaintiff's claims against the Bail Agent Defendants under Section 1983. *See, e.g.*, *Singleton v. Bail Hotline Bail Bonds, Inc.*, No. 8:22-CV-01826-MRA-KES, 2025 WL 3480997, at *8 (C.D. Cal. July 25, 2025) (summarily adjudicating the plaintiff's claims against bail agents where the plaintiff "had already been arrested before [police] officers arrived at the scene, and they had not contact with [the plaintiff] whatsoever"); *Bass v. Cnty. of San Bernardino*, No. 5:19-CV-00231-MWF-KES, 2020 WL 1678218, at *5 (C.D. Cal. Jan. 23) (recommending dismissal with prejudice of the plaintiff's Section 1983 claims against a bail bond company and its agents on the grounds that those defendants were not state actors), *report & recommendation adopted*, 2020 WL 1674258 (C.D. Cal. Apr. 6, 2020); *Boyd v. City of Oceanside Police Dep't*, No. 11CV3039 LAB WMC, 2013 WL 5671164, at *3 n.3 (S.D. Cal. Oct. 11, 2013) ("[T]he Ninth Circuit has found that bounty hunters and bail bond agents are *not* state actors acting under color of state law for purposes of Section 1983." (emphasis in original).) Although the Court doubts that Plaintiff can allege additional facts that the Bail Agent Defendants plausibly were acting under color of state law, at this time the Court's dismissal is **WITHOUT PREJUDICE**.

### C.   Claims Against the Riverside Defendants

The Riverside Defendants contend that Plaintiff's federal claims against them are subject to dismissal under Rule 8(a)(2) because she fails to identify which actions taken by which of the individual Riverside Defendants violated her constitutional rights. (*See* ECF No. 31-1 ("Riverside Mem.") at 6–9.) They also argue that Plaintiff fails to state a *Monell* claim against the County of Riverside because she fails plausibly to allege "that the County

25-CV-729 TWR (JLB)

had an official practice/custom of violating the rights of citizens based on arrests or prosecutions," (*see id.* at 9–10), and that she fails to state a claim against Sheriff Biano because "[h]is name appears only in the caption of the SAC" and "[i]t is unclear what, if any, involvement Bianco had in the events described in the SAC." (*See id.* at 12.)

### 1. *Claims Against the Riverside Deputies*

Plaintiff alleges claims against Riverside Deputies James, Roach, Lature, and Householder for violation of her First, Fourt, and Fourteenth Amendment rights, (*see* SAC at 9–10); failure to intervene, (*see id.* at 10); "kidnapping under color of law," (*see id.* at 12); and false arrest and excessive force arising from her December 2023 arrest, (*see id.* at 12–13). The Riverside Defendants contend that these claims must be dismissed under Rule 8(a)(2). (*See* Riverside Mem. at 6–9.)

Although Plaintiff attempts to clarify in her Opposition, (*see* Riverside Opp'n at 6–12), the Riverside Defendants are correct that any "new facts cannot be considered by the Court in ruling on the Riverside Defendants' [M]otion." (*See* Riverside Reply at 4 (citing *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001)); *see also Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiffs'] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993); *2 Moore's Fed. Practice*, § 12.34[2] (Matthew Bender 3d ed.))). In her Second Amended Complaint, Plaintiff alleges that "four Riverside County Sheriff's Deputies responded" to Officer Aanestad's December 26, 2023 call for backup.[6] (*See* SAC at 4.) It is not clear that these four deputies are the four Riverside Deputies

---

[6] It does not appear that any of the Riverside Deputies were involved in the April 18, 2024, or February 27, 2025 arrests. (*See* SAC at 5 (naming only Sgt. De Loss in connection with the April 18, 2024 arrest), 7–8 (alleging the February 27, 2025 arrest occurred in San Diego County and failing to name the "4 other deputies who never left their vehicles").)

25-CV-729 TWR (JLB)

named in the Second Amended Complaint, or whether they—as opposed to Officer Aanestad—were involved in the "intercept[ion]," "arrest[]," and "threat[] with a Taser." (*See id.*)  It is also unclear which of the four Riverside Deputies—if any—were involved in the search for Plaintiff, her husband, and/or their vehicle.  (*See id.*)  Under Rule 8(a)(2), these allegations do not suffice to put the Riverside Deputies on notice of the claims Plaintiff alleges against them.  *See, e.g.*, *Washington v. Luna*, No. 2:23-CV-09406-CBM-MAA, 2025 WL 1994572, at *5 (C.D. Cal. May 27) (dismissing § 1983 complaint because "a complaint which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." (internal quotation marks omitted and alterations in original)), *report & recommendation adopted*, 2025 WL 1994012 (C.D. Cal. July 15), *appeal dismissed*, No. 25-5991, 2025 WL 3873185 (9th Cir. Nov. 21, 2025); *Tafoya v. City of Hanford*, No. 1:20-CV-00010-LJO-SAB, 2020 WL 353227, at *4 (E.D. Cal. Jan. 21, 2020) ("Since Plaintiff fails to identify any specific Defendants he is referring to when he states 'officers' or 'sheriffs' or 'personnel,' Plaintiff's complaint fails to give fair notice of all of the allegations and claims directed against the Defendants."); *Garcia v. Cnty. of L.A.*, No. CV 15-3651-AG (KS), 2016 WL 8732339, at *4 (C.D. Cal. Aug. 18) (dismissing complaint where the "[p]laintiff inconsistently identifies Does 1–10 as deputies, sergeants, lieutenants, detectives, other officers, officials, executives, policymakers, and peace officers . . . , and he provides no other identifying characteristics about the Doe Defendants, such as their gender, race, hair color, or a physical description, to enable an identification . . . , and most damningly, Plaintiff does not allege any specific misdeeds by the individual Doe Defendants that would support a plausible inference that each individual Doe Defendant took an action against Plaintiff that violated Plaintiff's civil rights"), *report & recommendation adopted*, 2016 WL 8738259 (C.D. Cal. Sept. 30, 2016); *see also, e.g.*, *Jones*, 297 F.3d at 936 (affirming district court's rejection of a proposed jury instruction regarding the standard for an unreasonable search that "would invite a jury to find all of the officers liable for an alleged constitutional violation merely for being present at the scene of an alleged unlawful act" because "either integral participation or personal

involvement was required before a jury could find officers liable"). The Court therefore **GRANTS IN PART** the Riverside Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Section 1983 claims against the Riverside Deputies.

### 2. Claims Against Sgt. De Loss

Plaintiff alleges claims against Sgt. De Loss for violation of her First, Fourth, and Fourteenth Amendment rights, (*see* SAC at 9–10), and for "kidnapping under color of law." (*See* SAC at 12.) Like Plaintiff's claims against the Riverside Deputies, the Riverside Defendants contend that Plaintiff's claims against Sgt. De Loss are subject to dismissal under Rule 8(a)(2). (*See* Riverside Mem. at 6–9.)

Plaintiff alleges that Sgt. De Loss pulled her over on April 18, 2024, "claim[ing] to have a warrant for her arrest but refus[ing] to show it." (*See* SAC at 5.) Plaintiff also alleges Sgt. De Loss stated that he "knew who she was" and told her to "get out of the car or I'll break your window." (*See id.*) Sgt. De Loss arrested Plaintiff and her husband for resisting arrest and impounded their vehicle. (*See id.*) Plaintiff claims that she and her husband were transported separately, but it is unclear which of them—if any—Sgt. De Loss transported. (*See id.*)

Unlike Plaintiff's claims against the Riverside Deputies, *see supra* Section I.C.1, Plaintiff's allegations against Sgt. De Loss are individualized and provide sufficient notice of the claims she asserts against him. Although the Court has reservations concerning the sufficiency of Plaintiff's allegations, because the Riverside Defendants fail to raise any additional arguments for the dismissal of Plaintiff's claims against Sgt. De Loss, (*see generally* Riverside Mem.), the Court **DENIES IN PART** the Riverside Defendants' Motion to the extent it seeks dismissal of the claims against Sgt. De Loss.

### 3. Claims Against Sheriff Bianco

Plaintiff's only federal claim against Sheriff Bianco appears to be her claim asserted against "All Defendants" for violation of her First, Fourth, and Fourteenth Amendment rights. (*See* SAC at 9–10.) As the Court previously noted, *see supra* Section I.A.2, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or

her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen*, 885 F.2d at 646). For example, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* (quoting *Watkins*, 145 F.3d at 1093).

Here, Plaintiff alleges that, "[a]fter notifying the Riverside County Sheriff of an illegal foreclosure and invoking her constitutional rights, Plaintiff was arrested without a valid warrant" and, "[d]ays later, a backdated eviction notice appeared on her door." (*See* SAC at 2; *see also id.* at 5 (noting that Plaintiff was arrested by Sgt. De Loss on April 18, 2024, the day after the Riverside County Sheriff signed for her letter).) Plaintiff also alleges that, despite receiving Plaintiff's notice, Sheriff Bianco "failed to act, train, supervise, or discipline [his] subordinates." (*See id.* at 8.) Plaintiff does not allege that Sheriff Biano was personally involved in the incidents of December 26, 2023; April 18, 2024; or February 7, 2025. (*See generally* SAC.) The Second Amended Complaint also contains no non-conclusory allegations regarding Sheriff Biano's training, supervision, or control of the Riverside Officers or his acquiescence in any alleged constitutional deprivations. (*See generally id.*) For the same reasons the Court dismissed Plaintiff's claims against Sheriff Martinez, *see supra* Section I.A.2, the Court therefore **GRANTS IN PART** the Riverside Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Sheriff Bianco.

### 4. Claims Against the County of Riverside

Plaintiff alleges a *Monell* claim against the County of Riverside "[f]or maintaining unconstitutional policies, customs, and practices; failing to train and supervise; and ignoring prior written notices explicitly identifying Plaintiff's legal status and rights." (*See* SAC at 10.) As with Plaintiff's *Monell* claim against the County of San Diego, *see supra* Section I.A.3, Plaintiff does not identify an expressly adopted official policy, (*see generally*

SAC), or "[a] widespread practice or custom . . . so 'persistent' that it constitutes a 'permanent and well settled city policy' and 'constitutes the standard operating procedure of the local governmental entity.'" *Stein*, 2026 WL 84412, at *2 (quoting *Trevino*, 99 F.3d at 918). The Court therefore **GRANTS IN PART** the Riverside Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's *Monell* claims against the County of Riverside.

### D.      *Claims Against Officer Aanestad*

Plaintiff asserts Section 1983 claims against Officer Aanestad for violation of her First, Fourth, and Fourteenth Amendment rights through "[r]etaliatory arrest, . . . unlawful . . . seizure, [and] excessive force," (*see* SAC at 9–10); "kidnapping under color of law," (*see id.* at 12); and false arrest and excessive force, (*see id.*).

As an initial matter, Officer Aanestad argues that the Court must dismiss Plaintiff's federal claims against him because Plaintiff "impermissibly lump[s] all defendants together" in violation of Rule 8(a). (*See* CHP Mot. at 7, 13–14.) With regard to Plaintiff's claims for unlawful seizure (including "kidnapping under color of law") and excessive force, the Court agrees—after Plaintiff and her husband left the scene and Officer Aanestad called for backup, it is unclear whether and to what extent Officer Aanestad "intercepted, arrested aggressively, and subjected" Plaintiff's "vehicle [to a] search," "threatened [Plaintiff] with a Taser[,]" used "facial recognition software" on Plaintiff, and "towed and impounded" Plaintiff's vehicle. (*See* SAC at 4.) For the same reason Plaintiff's claims against the Riverside Deputies fail, *see supra* Section I.C.1, Plaintiff's allegations fail to provide Officer Aanestad sufficient notice of the claims Plaintiff alleges against him. The Court therefore **GRANTS IN PART** Officer Aanestad's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Section 1983 claims against him to the extent they are based on the Fourth and Fourteenth Amendments.

As for Plaintiff's claims under the First Amendment, Officer Aanestad argues that dismissal is required because Plaintiff does not allege any facts implicating the First Amendment. (*See* CHP Mot. at 8.) It appears, however, that Plaintiff may be attempting

25-CV-729 TWR (JLB)

to allege that Officer Aanestad only arrested her after she provided him a copy of her "Constructive Notice," which "visibly irritated" Officer Aanestad. (*See* SAC at 3–4.) To allege a retaliatory arrest claim, however, "a plaintiff must first show that there was no probable cause for the underlying arrest." *Massengale v. Dicus*, No. 5:24-CV-02352-SSS-SSC, 2025 WL 477818, at \*6 (C.D. Cal. Jan. 7) (citing *Nieves v. Barlett*, 587 U.S. 391, 401–04 (2019)), *report & recommendation adopted*, 2025 WL 474964 (C.D. Cal. Feb. 12, 2025). Because Plaintiff alleges that Officer Aanestad pulled her over "for allegedly failing to stop at a stop sign" and does not allege that she did, in fact, stop at the stop sign, (*see* SAC at 3), Plaintiff does not—and cannot—allege that Officer Aanestad lacked probable cause. *See, e.g.*, *United States v. Alexander*, 480 F. Supp. 3d 988, 994 (N.D. Cal. 2020) (concluding that officers had probable cause to believe that a criminal defendant had violated California Vehicle Code § 22450 "when he rolled through a stop sign"). The Court therefore **GRANTS IN PART** Officer Aanestad's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's Section 1983 claims against him for First Amendment retaliation.

## II.    State Law Claims

In addition to her federal claims, Plaintiff asserts a surfeit of state law claims—many of which are redundant of her federal claims—for trespass against the Bail Agent Defendants, (*see* SAC at 10–11); false imprisonment and intentional infliction of emotional distress against all Defendants, (*see id.* at 11); and assault and battery and violation of the Bane Act against the Bail Agent Defendants, Sgt. De Loss, the San Diego Deputies, and Officer Aanestad, (*see id.*).

### A.    *The San Diego and Riverside Defendants*

Although they raise many other arguments for dismissal of Plaintiff's state law claims, the San Diego and Riverside Defendants both contend that all of Plaintiff's state law claims against them must be dismissed because Plaintiff failed to comply with the claim presentation requirement appearing in Section 945.4 of the California Government Claims Act (formerly the California Tort Claims Act), Cal. Gov't Code §§ 810–998.3. (*See* S.D. Mem. at 15; Riverside Mem. at 10–12.) Plaintiff fails to address this argument in her

Opposition to the San Diego Defendants' Motion, (*see generally* S.D. Opp'n), but argues in response to the Riverside Defendants' Motion that she "substantially complied with the Government Claims Act by sending certified notices, lawful notifications, and Notices of Liability to Sheriff Bianco, his deputies, and related supervisors," (*see* Riverside Opp'n at 16), and that "any technical deficiency . . . [is] excused by equitable estoppel and equitable tolling."  (*See id.*)

Despite Plaintiff's argument to the contrary, (*see* Riverside Opp'n at 16 (citing *City of San Jose v. Super. Ct.*, 12 Cal. 3d 447, 456 (1974)), "[e]ven if the public entity has actual knowledge of facts that might support a claim, the claims statutes still must be satisfied." *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983, 990 (2012) (citing *City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 738 (2007)); *see also id.* at 987 (reversing Court of Appeal's holding that "a claim may substantially comply with the act, notwithstanding failure to deliver of mail it to one of the specified recipients" as "judicial expansion of the statutory requirements").  Further, "[t]he filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an *element* that a plaintiff is required to prove in order to prevail."  *Id.* (emphasis in original) (quoting *Del Real v. City of Riverside*, 95 Cal. App. 4th 761, 767 (2002)).  "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."  *Id.* (quoting *City of Stockton*, 42 Cal. 4th at 737–38).  "The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity."  *Id.* at 991 (citing *Life v. Cnty. of L.A.*, 227 Cal. App. 3d 894, 901 (1991)).

In arguing that she "substantially complied" with the claim presentation requirement by sending notices to the Sheriff, (*see* Riverside Opp'n at 16), Plaintiff concedes that she failed to deliver a claim to the "clerk, secretary, auditor, or . . . . governing body" of either the San Diego County or Riverside County Sheriff's Office as required by Section 915(a) of the Government Claims Act.  Plaintiff also produces no evidence that "the clerk, secretary, auditor[,] or board of the local public entity" actually received a claim.  *See* Cal.

25-CV-729 TWR (JLB)

Gov't Code § 915(e)(1).  Accordingly, "neither section 915(a)'s specific requirements for compliance, nor section 915(e)(1)'s provision deeming actual receipt to constitute compliance, were satisfied."  *See DiCampli*, 55 Cal. 4th at 991–92.

Not only has Plaintiff failed to comply with the claim presentation requirement, but it appears that she no longer can do so.  "A claim relating to a cause of action . . . for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action," Cal. Gov't Code § 911.2(a), and, "[w]hen a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim," Cal. Gov't Code § 911.4(a), "within a reasonable time not to exceed one year after the actual of the cause of action."  Cal. Gov't Code § 911.4(b).  Here, the last of Plaintiff's claims accrued on February 27, 2025.  *See, e.g.*, *Ridley v. City & Cnty. of S.F.*, 272 Cal. App. 2d 290, 291–92 (1969) (claims for assault, battery, false arrest and imprisonment by police officers accrued on day of incident).  Consequently, Plaintiff was required to present a claim related to her February 27, 2025 arrest on or before August 25, 2025, and to apply for leave to present an untimely claim on or before February 27, 2026.[7]

Nonetheless, Plaintiff argues that she is entitled to equitable estoppel or equitable tolling.  Equitable tolling, however, is not available.  *See Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1121 (2020) ("[T]he doctrine of equitable tolling cannot be invoked to suspend section 911.2's six-month deadline for filing a prerequisite government claim.").  As for equitable estoppel, "[a] public entity may be estopped from asserting noncompliance with the claims statutes where its agents or employees have deterred the filing of a timely claim by some 'affirmative act.'"  *Christopher P. v. Mojave Unified Sch. Dist.*, 19 Cal. App. 4th 165, 170 (1993) (citing *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438,

---

[7]    Consequently, Plaintiff was required to present claims related to her December 26, 2023 arrest by June 26, 2024, and to apply for an extension by December 26, 2024, and to present claims regarding her April 18, 2024 arrest by October 18, 2024, and to apply for an extension by April 18, 2025.  These deadlines have long expired.

25-CV-729 TWR (JLB)

445 (1989)).  This would require Plaintiff to allege "(1) the public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) relied upon the conduct to his detriment." *Id.* (citing *Johnson v. San Diego Unified School Dist.*, 217 Cal. App. 3d 692, 700–701 (1990); *DeYoung v. Del Mar Thoroughbred Club*, 159 Cal. App. 3d 858, 862 (1984)).  Plaintiff's Second Amended Complaint contains no such allegations.  (*See generally* SAC.)

Because Plaintiff fails to allege that she timely presented a claim to either the San Diego County or Riverside County Sheriff's Office—or is excused from doing so—the Court **GRANTS IN PART** the San Diego Defendants' and Riverside Defendants' Motions and **DISMISSES** Plaintiff's state law claims against them without reaching their additional arguments for dismissal.  Although the Court doubts that Plaintiff will be able to plead additional facts indicating that she timely complied with the claim presentation requirement or that the San Diego or Riverside Defendants are equitably estopped from asserting her noncompliance, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's state law claims against the San Diego and Riverside Defendants.

### B.      The Bail Agent Defendants

Plaintiff asserts state law claims against the Bail Agent Defendants for trespass, false imprisonment, assault and battery, violation of the Bane Act, and intentional infliction of emotional distress.  (*See* SAC at 10–11.)

#### 1.      Trespass

Plaintiff alleges a claim for trespass against the Bail Agent Defendants based on their "[u]nlawful entry onto clearly marked private property."  (*See* SAC at 10–11.)  The Bail Agent Defendants contend that dismissal is warranted because "Plaintiff contractually waived her rights to claim unlawful entry" in her "Plain Talk Contract" with Bail HotLine.  (*See* Bail Mot. at 15–16 (citing *Taylor v. Taintor*, 83 U.S. 366 (1873)).  Indeed, the "Plain Talk Contract" provides:

> I hereby acknowledge the authority of the surety to arrest the defendant at any time and at any place and therefore specifically and irrevocably grant the bail

[agent] permission and authority to enter and search any and all real property and chattel that is or reasonably believed by the surety to be under possession, control or occupancy at any time by the Defendant.

(*See id.* at 37.)  Plaintiff responds that this agreement is not properly considered at the Rule 12(b)(6) stage and that "contracts do not override constitutional protections."  (*See* S.D./Bail Opp'n at 10 (citing *Payton v. New York*, 445 U.S. 573, 590 (1980); *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004)).)

Although consent is a valid defense to trespass, *see, e.g.*, *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 16–17 (1977) ("The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another . . . .  Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong.), the Court agrees with Plaintiff that the Plain Talk Contract is not properly incorporated by reference.  The incorporation-by-reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)).  "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'"  *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint."  *Id.*

Plaintiff's Second Amended Complaint does not refer to the Plain Talk Contract, (*see generally* SAC), and, because the Plain Talk Contract "merely creates a defense" to Plaintiff's trespass claim, it does "not necessarily form the basis of" Plaintiff's Second Amended Complaint.  *See Khoja*, 899 F.3d at 1002.  The Court therefore declines to treat the Plain Talk Contract as incorporated by reference into Plaintiff's Second Amended

Complaint.  Because the Bail Agent Defendants' only argument for dismissal of Plaintiff's trespass claim hinges on the Plain Talk Contract, (*see* Bail Mot. at 15–16), the Court **DENIES IN PART** the Bail Agent Motion to the extent it seeks dismissal of the trespass cause of action.  The Court warns Plaintiff, however, that this claim does not appear to be warranted by existing law or evidentiary support.  *See* Fed. R. Civ. P. 11(b)(2)–(3).

### 2.    *False Imprisonment*

Plaintiff asserts that the Bail Agent Defendants falsely imprisoned her when they arrested her on February 27, 2025.  (*See* SAC at 11.)  Under California law, the tort of false imprisonment "consists of the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short."  *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994) (internal quotation marks omitted) (quoting *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1123, *as modified on denial of reh'g* (Dec. 1, 1988), *superseded in part by statute on other grounds as stated in Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826 (2001)).  The Bail Agent Defendants contend that they "had express authority to arrest Plaintiff under: A valid court-issued bench warrant; California Penal Code § 1299; [and] Plaintiff's signed waiver agreements."  (*See* Bail Mot. at 16.)

"California law does allow false imprisonment claims for arrests by law officers in two situations: when an arrest is made without a warrant . . . , and when an officer 'maliciously arrests and imprisons another by personally serving an arrest warrant issued solely on information deliberately falsified by the arresting officer himself[.]'"  *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1205 n.4 (9th Cir. 2003) (first citing *Jackson v. City of San Diego*, 121 Cal. App. 3d 579, 585 (1981), *overruled on other grounds by Asgari v. City of L.A.*, 15 Cal. 4th 744, 758 n.10 (1997); then quoting *McKay v. Cnty. of San Diego,* 111 Cal. App. 3d 251, 253 (1980)).  The Court takes judicial notice of the fact that Plaintiff's February 27, 2025 arrest was subject to a bench warrant issued in August 2024, for Plaintiff's failure to appear at her arraignment.  (*See* ECF No. 27-2 at 8–9, 51); *see also, e.g.*, *Mattingly*, 2025 WL 1771454, at *1.  "A bench warrant issued for failure to appear in a pending criminal matter is a valid warrant and provides authority for

police officers to arrest the person identified in the warrant," *Cannon v. City of Petaluma*, No. C 11-0651 PJH, 2012 WL 1183732, at *22 (N.D. Cal. Apr. 6, 2012) (first citing *United States v. Gooch*, 506 F.3d 1156, 1158–59 (9th Cir. 2007); then citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964); then citing Cal. Pen. Code § 978.5), and "[b]ail bond agents have authority to arrest fugitive defendants." *Bass v. Cnty. of San Bernardino*, No. 5:19-CV-00231-MWF-KES, 2020 WL 1678218, at *5 (C.D. Cal. Jan. 23) (citing Cal. Pen. Code § 1301), *report and recommendation adopted*, 2020 WL 1674258 (C.D. Cal. Apr. 6, 2020).

Because the Bail Agent Defendants arrested Plaintiff pursuant to a bench warrant, Plaintiff can only state a claim against them for false imprisonment if they maliciously arrested her using a "warrant issued solely on information deliberately falsified by the arresting officer himself." *See Blaxland*, 323 F.3d 1205 n.4. Plaintiff alleges, however, that it was Judge Anderson who "falsified the record," (*see* SAC at 7), not the Bail Agent Defendants. Further, the fact that Plaintiff informed the Bail Agent Defendants of her belief that the bench warrant was issued "under false pretenses," (*see id.*), did not suffice to put the Bail Agent Defendants on notice that the validity of the warrant was in question because "reasonable agents would conclude that the perpetrator would lie to avoid incarceration." *See Bass*, 2020 WL 1678218, at *6. Because Plaintiff fails to allege any facts plausibly showing that the Bail Agent Defendants' February 27, 2025 arrest of her was not pursuant to a facially valid warrant, the Court **GRANTS IN PART** the Bail Agent Defendants' Motion and **DISMISSES** Plaintiff's claims against them for false imprisonment. Although the Court doubts that Plaintiff can plead additional facts to cure these deficiencies, dismissal is **WITHOUT PREJUDICE** at this time.

### 3.    *Assault and Battery*

Plaintiff brings a claim for assault and battery against the Bail Agent Defendants based on their "[u]se of physical force in absence of legal authority." (*See* SAC at 11.) The Bail Agent Defendants argue for dismissal because the "[u]se of reasonable force to detain a fugitive pursuant to a valid warrant does not constitute battery." (*See* Bail Mot. at 16 (citing *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269 (1998)).) "By failing to respond

to the arguments raised by Defendant on these claims, Plaintiff failed to oppose the motion to dismiss these claims.  Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999-BEN WVG, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) (collecting cases); *see also, e.g.*, *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his claim[.]" (citing *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026 (4th Cir. 1994))).  Accordingly, the Court **GRANTS IN PART** the Bail Agent Defendants' Motion and **DISMISSES WITH PREJUDICE** Plaintiff's claim against them for assault and battery.  *See, e.g.*, *Lucky Star Enters. III, LLC v. Wells Fargo Bank, N.A.*, 585 F. Supp. 3d 1297, 1303 (W.D. Wash. 2022) (dismissing abandoned claim with prejudice); *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-CV-02349-TEH, 2015 WL 5138080, at *5 (N.D. Cal. Sept. 1, 2015) (collecting cases and dismissing with prejudice claim that the court "consider[ed] . . . abandoned and the argument conceded" where the plaintiffs failed to respond to the defendant's motion to dismiss the claim); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, No. 08-CV-28-MMA (WMC), 2012 WL 12953527, at *3 (S.D. Cal. July 23, 2012) ("[T]he abandoned claims are deemed to have been dismissed with prejudice.").

### 4.  Bane Act

Plaintiff alleges a Bane Act claim against the Bail Agent Defendants based on their "[i]nterference with Plaintiff's rights through threat, intimidation, or coercion." (*See* SAC at 11.)  The Bane Act "proscribes any 'interfere[nce] with' or attempted 'interfere[nce] with' protected rights carried out 'by threat, intimidation or coercion.'" *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 800, *as modified* (Nov. 17, 2017).  The Bail Agent Defendants contend that "lawful arrest and detention do not constitute coercion under the Act." (Bail Mot. at 16 (citing *Shoyoye v. Cnty. of L.A.*, 203 Cal. App. 4th 947 (2012)).

/ / /

25-CV-729 TWR (JLB)

"A Bane Act claim cannot proceed where there is no constitutional violation." *Hollamon v. City of L.A.*, 709 F. Supp. 3d 992, 1006 (C.D. Cal. 2023) (citing *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018)), *aff'd*, No. 24-341, 2025 WL 927310 (9th Cir. Mar. 27, 2025). Because Plaintiff has failed plausibly to allege that the Bail Agent Defendants violated her constitutional rights, *see supra* Sections I.B & II.B.2–3, the Court **GRANTS IN PART** the Bail Agent Defendants' Motion and **DISMISSES** Plaintiff's Bane Act claims against them. *See, e.g.*, *Hereford v. City of Hemet*, 791 F. Supp. 3d 1126, 1160 (C.D. Cal. 2025); *Hollamon*, 709 F. Supp. 3d at 1006; *Jaime-Gonzalez v. Cnty. of L.A.*, No. CV186600MWFJPRX, 2018 WL 8058840, at *9 (C.D. Cal. Dec. 26, 2018). Because the Court has dismissed without prejudice the claims from which Plaintiff's Bane Act claims derive, dismissal of the Bane Act claims is **WITHOUT PREJUDICE**.

### 5.    *Intentional Infliction of Emotional Distress*

Finally, Plaintiff alleges a claim against the Bail Agent Defendants for intentional infliction of emotional distress. (*See* SAC at 11.)

> A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)) (citing *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991)). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050–51 (internal quotation marks omitted) (quoting *Potter*, 6 Cal. 4th at 1001). "And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1051 (internal quotation marks omitted) (quoting *Potter*, 6 Cal. 4th at 1001). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be

expected to endure it." *Id.* at 1051 (alteration in original) (internal quotation marks omitted) (quoting *Potter*, 6 Cal. 4th at 1004).

Here, Plaintiff alleges that "Defendants engaged in extreme and outrageous conduct by forcibly seizing Plaintiff, falsely imprisoning her, subjecting her to intimidation, and disregarding her clearly established legal rights." (*See* SAC at 11.)   The Bail Agent Defendants urge that "a lawful arrest under a valid bench warrant and pursuant to contractual consent, does not, as a matter of law, rise to the level of 'outrageous.'" (*See* Bail Mot. at 17.)   The Court agrees—in light of Plaintiff's failure plausibly to allege a claim against the Bail Agent Defendants for wrongful arrest, false imprisonment, excessive force, assault, or battery, Plaintiff also fails plausibly to allege that the Bail Agent Defendants' conduct was extreme or outrageous. *See, e.g.*, *Ngo v. City of Westminster*, No. 8:25-00705 ADS, 2025 WL 3672539, at \*5, \*8 (C.D. Cal. Nov. 26, 2025) (dismissing claim for intentional infliction of emotional distress where "there was probable cause for Plaintiff's arrest" and "the [complaint] contains no allegations of extreme and outrageous conduct by the Defendants").   The Court therefore **GRANTS IN PART** the Bail Agent Defendants' Motion and **DISMISSES** Plaintiff's claims against them for intentional infliction of emotional distress.   Again, because dismissal of the claims from which Plaintiff's intentional infliction of emotional distress claims would derive is without prejudice, dismissal of the intentional infliction of emotional distress claims is also **WITHOUT PREJUDICE**.

### C. Officer Aanestad

Plaintiff also alleges state law claims for false imprisonment, assault and battery, violation of the Bane Act, and intentional infliction of emotional distress against Officer Aanestad. (*See* SAC at 11.)   As an initial matter, Officer Aanestad contends both that this Court lacks supplemental jurisdiction over Plaintiff's state law claims against him, (*see* CHP Mot. at 18), and that he has immunity under California Government Code section 820.2. (*See* CHP Mot. at 18–19.)   Because the Court has dismissed Plaintiff's Fourth and Fourteenth Amendment claims against Officer Aanestad without prejudice, *see supra*

Section I.D, it would be premature for the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims against him at this time. *See, e.g.*, *Tolan v. Hartshorn*, No. 3:10-CV-17-ECR-RAM, 2010 WL 5070932, at *8 (D. Nev. Dec. 6, 2010) (continuing to exercise supplemental jurisdiction where federal claims were dismissed with leave to amend).

As for Section 820.2, although the Court agrees that Plaintiff "has not successfully refuted the state-law immunities afforded to Officer Aanestad," (*see* CHP Reply at 10), it is Officer Aanestad who bears the burden of establishing that he is entitled to immunity. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012). "As a matter of law, section 820.2 ['discretionary'] immunity does not apply to an officer's decision to detain or arrest a suspect." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 920 (9th Cir. 2017) (alteration in original) (quoting *Liberal v. Estrada*, 632 F.3d 1064, 1084 (9th Cir. 2011), *abrogated in part on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023)). "Nor would this immunity extend to any other police action in this case because Cal. Gov. Code § 820.2 covers only 'policy' decisions made by a 'coordinate branch[] of government,' not 'operational decision[s] by the police purporting to apply the law.'" *Id.* (alterations in original) (quoting *Liberal*, 632 F.3d at 1084–85).

Because the Court concludes it would be improper to decline supplemental jurisdiction over Plaintiff's state law claims against Officer Aanestad at this time and that Officer Aanestad is not entitled to immunity under Section 820.2, the Court will proceed to analyze the sufficiency of Plaintiff's allegations.

### 1.    *False Imprisonment*

Plaintiff alleges that Officer Aanestad falsely imprisoned her when he "[d]etain[ed] Plaintiff without lawful justification." (*See* SAC at 11.) Officer Aanestad contends that this claim is statutorily barred by California Penal Code section 847(b), (*see* CHP Mot. at 19), which provides:

> (b)    There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or

> law enforcement officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances:
>
> (1)   The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.
>
> (2)   The arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested.
>
> (3)   The arrest was made pursuant to the requirements of Section 142, 837, 838, or 839.

Cal. Pen. Code § 847(b).  Plaintiff responds that, "[b]ecause the SAC alleges a warrantless and punitive arrest with a manufactured probable cause, the arrest is unlawful and therefore Plaintiff states a valid false imprisonment claim." (*See* CHP Opp'n at 17.)

The question, therefore, is whether Plaintiff plausibly alleges that her arrest was unlawful or that Officer Aanestad lacked reasonable cause to believe that the arrest was lawful.  Here, Plaintiff alleges that she "was pulled over by California Highway Patrol Officer Graham Nigel Aanestad for allegedly failing to stop at a stop sign." (*See* SAC at 3.)  Officer Aanestad therefore had reasonable suspicion to stop her.  *United States v. French*, 468 F. App'x 737, 738 (9th Cir. 2012) (citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)); *see Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").  Although Officer Aanestad "informed Plaintiff and her husband that they were not free to leave," Plaintiff and her husband then "continued on to a local hardware store." (*See* SAC at 4.)  Plaintiff and her husband were arrested after Officer Aanestad and backup Riverside Deputies caught up to them. (*See id.*)  Accordingly, Officer Aanestad also had probable cause to arrest Plaintiff based on her fleeing the traffic stop.  *See, e.g.*, *United States v. Garcia*, 516 F.2d 318, 320 (9th Cir. 1975) (holding that fleeing from an officer's stop "is probative of criminal activity"); *see also, e.g.*, *Randolph v. Adams*, No. C 02-4196 JSW (PR), 2006 WL

25-CV-729 TWR (JLB)

2032542, at *2 (N.D. Cal. July 18, 2006) (concluding police had probable cause to believe the petitioner had evaded a police vehicle where he continued to drive after officers activated red lights and siren and instructed him to pull over and, after a mile, "pulled over, briefly stopped, and then resumed driving"); Cal. Veh. Code § 2800.1(a) ("Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . ."). Further, to the extent Plaintiff suggests that Officer Aanestad's initial stop or subsequent arrest were motivated by some improper purposes, (*see, e.g.*, SAC at 3 ("The stop was premeditated, as the officer was lying in wait on the opposite side of the street."), 4 ("This assertion visibly irritated the officer[.]")), "an officer's subjective thoughts play no role in the Fourth Amendment analysis." *United States v. Ramirez*, 473 F.3d 1026, 1030 (9th Cir. 2007) (citing *Whren*, 517 U.S. at 811–13). Because it is clear from the face of the Second Amended Complaint that Officer Aanestad had probable cause to arrest Plaintiff, the Court **GRANTS IN PART** Officer Aanestad's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's claims against him for false imprisonment under California Penal Code section 847(b).

### 2. Assault and Battery

Plaintiff asserts a claim against Officer Aanestad for assault and battery based on his "[u]se of physical force in absence of legal authority." (*See* SAC at 11.) Specifically, Plaintiff alleges that she was "threatened with a Taser," "arrested aggressively," and "facial recognition software was used on [her] without legal justification." (*See id.* at 4.) Officer Aanestad argues that these allegations fall short of excessive force and that it is unclear whether Office Aanestad or the Riverside Deputies applied the alleged force. (*See* CHP Mot. at 21–22.) Because the Court agrees that Plaintiff fails to allege that Officer Aanestad, as opposed to any of the other officers on scene, applied the alleged force, (*see, e.g.*, SAC at 4 ("The couple was subsequently intercepted, arrested aggressively, and subjected to a vehicle search. Kathleen was threatened with a Taser . . . , and facial recognition software was used on Kathleen without legal justification.")), the Court **GRANTS IN PART**

25-CV-729 TWR (JLB)

Officer Aanestad's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against him for assault and battery for the same reasons the Court dismissed Plaintiff's Fourth and Fourteenth Amendment claims against Officer Aanestad. *See supra* Section I.D.

### 3. Bane Act

Plaintiff alleges that Officer Aanestad violated the Bane Act by "[i]nterfer[ing] with Plaintiff's rights through threat, intimidation, or coercion." (*See* SAC at 11.) Officer Aanestad contends "[P]laintiff cannot state a valid claim against Officer Aanestad for violation of the United States Constitution or California law; thus, [P]laintiff cannot state a claim under the Bane Act." (*See* CHP Mot. at 22.) As with the Bail Agent Defendants, *see supra* Section II.D, because Plaintiff has failed plausibly to allege that Officer Aanestad violated her constitutional rights, *see supra* Sections I.D & II.C.1–2, the Court **GRANTS IN PART** Officer Aanestad's Motion and **DISMISSES** Plaintiff's Bane Act claims against him. Because the claims on which Plaintiff's Bane Act claim is premised were dismissed without prejudice, dismissal of the Bane Act claim is also **WITHOUT PREJUDICE** at this time.

### 4. Intentional Infliction of Emotional Distress

Finally, Plaintiff alleges that Officer Aanestad intentionally inflicted emotional distress on her when he "forcibly seiz[ed] Plaintiff, falsely imprison[ed] her, subject[ed] her to intimidation, and disregard[ed] her clearly established legal rights." (*See* SAC at 11.) Officer Aanestad argues that, because Plaintiff's arrest was supported by probable cause and the preceding stop was justified by reasonable suspicion and probable cause, "Plaintiff fails to allege that Officer Aanestad engaged in conduct that is sufficiently outrageous or extreme to support a claim for intentional infliction of emotional distress, as required under California law." (*See* CHP Mot. at 24.) For the same reasons the Court granted the Bail Agent Defendants' Motion to dismiss Plaintiff's claims for intentional infliction of emotional distress, *see supra* Section II.B.5, the Court **GRANTS IN PART**

/ / /

Officer Aanestad's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Officer Aanestad for intentional infliction of emotional distress.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** the Motion. Specifically, the Court **DENIES** the Motions as to Plaintiff's Section 1983 claims against Sgt. De Loss and trespass claims against the Bail Agent Defendants and **DISMISSES WITH PREJUDICE** Plaintiff's claims for assault and battery against the Bail Agent Defendants and for First Amendment retaliation and false imprisonment against Officer Aanestad. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's remaining claims. Plaintiff **MAY FILE** an amended complaint curing the above-identified deficiencies <u>on or before April 30, 2026</u>. The Court advises Plaintiff that any amended complaint must be complete in itself without reference to her prior complaints and any defendants not named and any claims not re-alleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be considered waived if not repled); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989), *as amended* (Feb. 22, 1990) ("[A]n amended pleading supersedes the original."). *Should Plaintiff elect not to file an amended complaint, this case* **SHALL PROCEED** *as to Plaintiff's surviving claims under Section 1983 against Sgt. De Loss and for trespass against the Bail Agent Defendants.*

Defendants **SHALL RESPOND** to Plaintiff's operative pleading <u>on or before May 21, 2026</u>. In accordance with Section III.B.3 of the undersigned's Standing Order for

/ / /

/ / /

/ / /

/ / /

/ / /

25-CV-729 TWR (JLB)

Civil Cases, Defendants "must make every effort to coordinate and consolidate the briefing or use the notice-of-joinder procedure to avoid duplication in briefing."

**IT IS SO ORDERED.**

Dated:  March 26, 2026

_____

Honorable Todd W. Robinson
United States District Judge

25-CV-729 TWR (JLB)